I'm making the motion. I'm moving. Allison, would you stand? Ms. Allison Currant? The Court will be happy to entertain your motion, Judge Frederick. Okay. Well, then, Allison is my current law clerk, and she is a member of the Bar of the Highest Courts of Iowa, Minnesota, and the District of Columbia. And I don't think I have to convince my colleagues that she is very worthy of membership in our bar. And so I would like to move that the bar accept her membership and administer her bill. Hearing no dissent, the Court is happy to grant your motion. Welcome. Please raise your right hand if you swear or affirm that you will comport yourself as an attorney and counsel with this Court uprightly and according to law, and that you will support the Constitution of the United States of America. I do. Congratulations, and welcome to the Bar of the United States Court of Appeals for the better service. We welcome you to the bar and look forward to seeing you at the podium soon. Thank you. Can I take over again? You can. Then let's hear from Mr. Kirsch. You may proceed. Good morning, Your Honor. This case involves our assertion of an arbitrated misapplication of the law and of the Department of Justice's improper utilization and abuse of an indefinite suspension without pay in the circumstances where its employee is a target of an ongoing criminal investigation. So what is your view about what it is necessary for the government to do in these circumstances? Well, I think the Court and Bank and Perez talked about a possible conflict. Certainly, we would maintain that reasonable cause has been the standard to impose an indefinite suspension in these types of cases from its inception. Reasonable cause for what? To prove that the crime has been committed or to prove that there is a reasonable basis that they will promote the efficiency of the service to conduct the indefinite suspension? Well, reasonable cause, as it has been applied, as a reasonable belief from either an objective source by independent magistrates, by indictments information, or an agency comprehensive investigation of the underlying matters, they may be able to get reasonable cause from that. But here, all they had was an OIG letter indicating that they had an ongoing investigation of possible criminal misconduct. Of a substantial nature. Right. Of a substantial nature. The allegations are substantial. There could be a nexus if this conduct could be proven. What is the government to do while this investigation is underway with respect to this employee? Well, they could do what they've always done. And that, they have several options. The first, they could put the employee on home duty with pay. The second thing they could do is reassign the employee to non-sensitive type of duties. That was considered, wasn't it, in this case? The warning indicated that it was considered, but there was testimony by a second-line supervisor that there were other positions outside the facility in which the employee could have been assigned. Well, that's kind of a mark-finding role that we're not in here. Are we at the appellate level to second-guess the supervisors to the existence of those alternate positions? Well, the other things they could have done is what they always have done. And that is dispense with a 30-day notice provision where if they have reasonable cause that a crime has been committed. An agency can utilize that provision if they believe that if there is an indictment or other action. But you're suggesting, it seems to me, the reason the burden is higher on the agency if they dispense with the 30-day notice is because there's a recognition that's not good for employees. And the 30-day notice requirement is something that helps employees. So it seems a little odd to me that you're here arguing that advocating dispensing with the 30-day notice requirement. Well, they have that opportunity. The statute provides that to them. It doesn't seem that Conn was quite as complainant. But the statute doesn't compel. I mean, you're not arguing here that they are compelled to not give him notice so that they won't have to meet the standards. No, certainly not. So given that you would agree then that they were within their rights to give him a 30-day notice, which is typically seen as healthy for employees, then why is the standard anything more than promoting the efficiency of the service? This court suggested that, well, first of all, there was no meaningful opportunity to apply to the specific charges. All that was provided, again, was an OIG letter indicating that over a two-year period of time, there may have been a surprise. Well, they weren't charging him for having committed crimes. They didn't have a basis for charging him for committing crimes, right? That's not what this case is about. If that were true, they presumably would have discharged him and not just indefinitely suspended him. If we were to go on the justices' assertion that simply maintaining the order or the potential risk was enough in a case, then any criminal investigation, which they believe could be serious and could have those consequences, could result in an employee being placed on indefinite suspension without pay in this case for over 10 months. What's wrong with that in a matter of this consequence where the very fundamental nature of your position has been compromised? I think it offends due process for one. There was no meaningful opportunity to apply. You've got a chance to read the 30-day notice. It gives you that. You've got 30 days, and if you come forward and say, it wasn't me by any fact. I was in Salem at the time. It couldn't have been me. Then, of course, then they can take that into consideration. If that didn't happen, it is we all know. Well, in Cheney v. Justice, this court said that you nearly can't. And that was a security clearance case where recognized less due process. But in Cheney, the charges were very vague and ambiguous. And here, there were specific statements of the type of conduct in question, the general dates involved. And it's quite different. And the place in which this activity occurred. So it's quite different from Cheney. Well, we would maintain that the charges in Cheney indeed were more specific. But in Cheney, they can't. But Mr. Goode had the opportunity, didn't he? When he received that, to come forward if he could have and said, no way that could be me. There could be a complete rebuttal right there on this floor if he was capable of doing it. If I could respond to both of your points. I think in Cheney, they talk about the charges were an abuse of the subpoena process. It was that he violated a confidentiality agreement, that he queried law enforcement databases. The charge here was that over a possible two-year period, covering FCC, Petersburg, and possibly other locations, that he engaged in bribery and allowing improper contraband into the facility. As we saw in Perez, similar type of charges that even involved a sting operation by Perez, against Perez, resulted in no indictment being issued. And the problem really is exacerbated by this court's decision in Richardson and then Salinas, providing that at the end of the day, even if an employee is exonerated, there is no assurance whatsoever that that employee will receive back pay. Indeed, in Salinas, this court acknowledged that it may just be that the employee never receives any pay or has any forum to challenge that. You were going to tell us if the 30-day notice gave him every opportunity to respond, if he could have. The problem was that he denied the charges, first of all, in a written reply. Denied generally, saying, and asked for, please provide certain specifics. The warden who made the decision in this case was not the same warden that even sent the matter off initially to Internal Affairs. So she knew nothing about the charges, made no independent investigation about it. Certainly, there could be a certain level of cooperation between an OIG and… But that all suggests that in the context of an indefinite suspension, you get the opportunity to adjudicate, or were supposed to be adjudicating, the underlying merits of the criminal conduct he's charged with. It's not a form in which to duplicate what DOJ, what the indictment, or what the U.S. Attorney is doing, is it? I think that due process demands that an employee have… It's not been contested that a property and liberty interest have been impacted by this. That you look at generally due process and the flexibility provided for it, to look at the interest of the employee, and you look at what might have been deprived by not providing the procedures that are accorded to the employee. Here, the procedures are specific reasons that are to be provided to you in a meaningful reply. It also provides for a preponderance of the evidence. The cases have made it very clear that a preponderance… In Dunnington and other cases, where credibility… And Dunnington, excuse me, was an indefinite suspension case, that the credibility of key parties is in question, the agency must assure itself it has a sound basis for acting. The agency must determine whether it has enough material to go on. And in that case, the information called from criminal complaints and supporting allegations… Was that a 30-day case or not? That was less than a 30-day case. In other words, they had to satisfy the reasonable cause of the crimes being committed because there was an absence of a 30-day notice, which isn't the standard that's applicable here, given that there was a 30-day case. Correct. If I may briefly discuss about the statute and the legislative history. You're not going to contest the Perez case, are you? I'm not going to contest the Perez case in that it is limited holding, saying that if you look strictly at the 7513B1 and the short 30-day notice period, you cannot gather simply from that statute a reasonable cause. But as Judge Dyke pointed out, the Administrative Procedure Act, merit system protection principles, promotion of the efficiency of the service, and other portions of the statutes assure some reasonable basis. That's a dissent. I understand it's a dissent. So it has absolutely no weight other than how it persuades, which it didn't persuade the court earlier, did it? Well, I think the court said that it had a very narrow issue before it. And it was not argued, because it appeared to them that it's ruling in four other cases, three of which said that there was an independent reasonable cause standard, but that was merely dicta, and relying on those cases was not enough. But I think the court certainly invited other considerations that may lead the court to establish some sort of reasonable cause standard. Even the government acknowledged there has to be some reasonable basis, that it cannot be arbitrary. Do you want to save your rebuttal time? Oh, sure. Thank you. Ms. Stern. Good morning, Your Honors. May it please the Court. When Warden Stansberry received a letter from the Office of Inspector General in July 2007, she knew right away a few things. That one of her employees who worked in the prison as a case inmate manager… Well, let me put this out here on the standard. I mean, you gave him 30 days' notice. What could you have shown above the allegations? What possible responses could you give him to rebut the presumption of suspension? Well, he basically would want to try to rebut the agency's conclusion that indefinitely suspending him in some way promoted the efficiency of the service. So he could have, as Judge Rader suggested, simply come forward and say, I didn't do it. You've got the wrong guy. The investigation is of another Edward Goode, someone with the same name as me. I don't have a job that is closely related to these serious allegations, or the allegations are, in fact, not really so serious, or my indefinitely suspension is not really going to promote the efficiency of the service. These are the lines of response that he could have come forward with. But the basic standard applicable to this adverse action has… So what is the next question? I guess I'm bothered by the first criteria that you laid out, because I thought part of the point of this is that the agency isn't in a position and ought not to be in a position to adjudicate the underlying criminal violation. So if he comes in and he says, I didn't do it, and I've got five witnesses that I'd like you to talk about that can all tell you that I didn't do it, does the agency have to go forward and do a further investigation of that information in this context? No, because you're correct. It's not the underlying charges that are at issue here. It's the existence of the investigation. So, in fact, even if he does come forward with that kind of information, it may or may not affect the agency's judgment as to whether or not to go forward with the indefinitely suspension, because what we're looking at is the totality of the circumstances of the facts before the agency… In what context to establish what? To… It promotes the efficiency of the service. Exactly. That it promotes the efficiency of the service because, for example, in this case, the warden concluded that retaining Mr. Good on duty would represent a potential threat to the orderly operation of the prison, and therefore removing him promotes the efficiency of the service. Anything that he can come forward to that goes to rebut that in the warden's mind will help rebut the efficiency of the service standard, but I can't say that one single denial on the merits will be sufficient to overcome all of the circumstances that goes into determining whether or not indefinitely suspending an employee in a given situation promotes the efficiency of the service. Well, what if the warden, based on what he hears, just happens to believe Mr. Good, and says, you know, in my heart, I believe he's telling the truth, and then he didn't commit the violation? Would it then be appropriate for him to continue the indefinite suspension, notwithstanding that belief? Well, if the warden genuinely felt that, then I think that the conclusion, the related conclusion would be, in most instances, and probably in this one, that retaining Mr. Good would not be a threat to the institution, but there are, I can even imagine, circumstances, and I realize we're kind of dealing with a hypothetical here, but there might even still be circumstances where even if the warden believed Mr. Good, it might still promote the efficiency of the service to indefinitely suspend Mr. Good, if, for example, the allegations were extremely serious, and there was a lot of notoriety about it, such that the public was fearful, and Mr. Good's colleagues were fearful, and they weren't able to efficiently work. I mean, that's why I come back to this totality of the circumstances evaluation to determine, in each instance, whether retaining the employee on duty during an ongoing investigation promotes the efficiency of the service. In Perez, there was a lot of discussion of the, you know, you had a lot of cases floating out there, and there was discussion in the district as well as in Judge Price and in Kerr. Don't you feel like the standard you're proposing here, in terms of the ponderance of evidence that it would promote the efficiency of the service, falls back against some of our precedent work? Well, as the majority pointed out in Perez, those cases that did apply a reasonable cause standard arose always in the context of instances where less than 30 days' notice was given. And so there was a tendency for many, many, many years to conflate the crime provision of the short notice with the standards for imposing the indefinite suspension in the first place. But the statute, 7513, speaks only to the efficiency of the service. That's the only standard that Congress selected for all adversaries. I'm not talking about whether our precedent is right or wrong. What I'm talking about is whether there's conflicting precedent. Well, again, because those cases that used the reasonable cause standard did involve less than 30 days' notice, arguably, as the majority, I believe, correctly found, any indication that reasonable cause was also necessary for the indefinite suspension was basically that there wasn't critical to the court's holding. Maybe we need reasonable cause. Otherwise, a supervisor could always indefinitely suspend someone under the guise that it's just an efficient move, right? Well, to say maybe... Maybe they just want to save money. Maybe this is just a disruptive employee. And so they say, well, let's just indefinitely suspend them. Well, that is, in fact, the standard that Congress selected. And Congress could have chosen to put the reasonable cause standard into 7513A. Obviously, when Congress wanted to impose a reasonable cause standard, it knew how to do so. It did that in 7513B. But efficiency of the service is a pretty broad, amorphous term. And if you can indefinitely suspend someone just because you think it's efficient, have we really created a system that gives confidence to employees? Your Honor, it is a broad term. But remember that before there was the efficiency of the service standard, and I'm going way back to, I think, maybe the Pendleton Act, there was no standard. Employees, government employees, were absolutely active. They could be dismissed for any reason and for no reason whatsoever. The government did not have to give any reason, and they could just dismiss an employee. The efficiency of the service was brought in to say, we don't want completely arbitrary action. We want there to have to be at least some reason for taking action against the employee. But I'm suggesting that the breadth of that standard almost invites arbitrariness. Well, it doesn't, because the investigation, as we suggest in our brief, it has to be at least a bona fide investigation. For example, if it was one that the employee demonstrated was just pretextual and just really an opportunity for the agency to discriminate against him, had no relationship to the efficiency of the service, it would not be upheld. But the efficiency of the service is the standard that Congress elected to guard against arbitrary action, and the agency does have to come forward with some reason, ground, charge, call it what you will, and they have to relate that reason to some aspect, something that will promote the efficiency of the service. And then they've got the burden, right? And they've got the burden. So in this case, they had an investigation by a fairly independent... So if here it was not an investigation by OIG and the U.S. Attorney, but it was, you know, there's some neighborhood gossip about it, that would be the kind of thing that might not be sufficient to satisfy the efficiency of the service, right? I'm sorry, did your question... That there's no bona fide investigation. That's correct, because the regulations that implement the statute talk about an indefinite suspension pending an investigation. What about if you were charged, there were an investigation going on, but it has little relationship to these ongoing duties? Again, it would be difficult in that situation for me to imagine that the agency could meet... They might, but it would be much more difficult for the agency to meet the efficiency of the service standard, which is why this case, which involves allegations that are very serious, closely related to the job that Mr. Gidd did, and arose in a setting, federal penitentiary setting, which is a very sensitive setting, it's clear the agency does meet the efficiency of the service standard in this case. What safeguards are in place to protect employees like Mr. Gidd from trumped-up charges? You can envision a scenario where inmates for one reason or another decided to sort of raise allegations just to get rid of a guard in the prison. What can the employees do to protect themselves against these kinds of trumped-up charges? Well, again, the agency... The efficiency of the standard provision, standard, that is really the safeguard for the employee and the right to have... It requires at least a reasonable basis for some sort of charge. It does, and in fact, the efficiency of the standard, the service standard has in fact been described by some courts as a reasonable basis. The agency has to have a reasonable basis for taking the action, and that is the safeguard for the employee. The Congress, by selecting the efficiency of the service standard, looked at adverse actions basically from the perspective of the agency, saying they have to have some reason that protects the employee, but the reason has to be one that promotes the efficiency of the service standard that the agency is concerned with. What seems particularly harsh in the context, I think, is perhaps the fact that at the end of the day, even if the employee is completely exonerated and it is concluded by everyone that the charges were absolutely positively bogus, the employee, under our case law at least, doesn't get that bad. Your Honor, that does seem harsh, and obviously if I was in that position, I would think it was extremely harsh. Congress could have avoided that kind of outcome by selecting a different standard. For example, many discharge standards require a demonstration of misconduct or malfeasance or nonfeasance on the part of an employee, and Congress could have said, action under 7513 can only be taken where there is a demonstration of some misconduct or fault or malfeasance by the employee. But Congress didn't select that standard. They simply selected a standard that only requires the agency to demonstrate that its action promotes the efficiency of the service, and it's judged from the time that the action is taken. So if at the time you need that, the suspension is imposed, it does promote the efficiency of the service, it is a justifiable and sustainable adverse action, and notwithstanding that somewhere down the road the employee may be exonerated, it doesn't change the nature of the adverse action when it is instituted. And though it does have some harsh aspects to it, I have to admit, it is the standard that Congress selected. The other... I'm sorry, I didn't mean to interrupt. It looked like you had a question. If not, I was going to move on to just briefly discuss the notice that Mr. Goode was provided in the context of his arguments about the Cheney case. In Cheney, this Court did talk about the requirements of notice. Of course, Cheney also followed on the heels of Alston. In this case, as we pointed out in our brief, Mr. Goode got very specific notice about what exactly was being investigated in this case. We're talking about bringing drugs and alcohol into the very prison where he worked during the years 2006 and 2007. That's at least as specific as the information that was given to Mr. Alston when he was told that his security clearance was possibly being suspended because of health reasons, and he wasn't even told the exact nature of the health condition, and yet the Court found that notice to Mr. Alston was sufficiently specific. In this case, Mr. Goode was told, you are being investigated for bringing in drugs and alcohol into the prison where you work. That certainly is enough to let him know what he's being investigated for, and to either deny it or not respond to it. It may be more specific than in Cheney, but it didn't tell him who, exactly why, exactly when. It was a general period, a couple-of-year period. How is he supposed to prove a negative under those general circumstances? Well, again, Your Honor, we're not talking about him proving the truth or falsity of the actual underlying content. We're talking about, and I'm taking this from the Court's suspicions in Cheney, Alston, other notices. The question is whether he had an opportunity to respond. To respond and respond in an even focused way. So if the agency simply says, you know, you violated some of our regulations, that's pretty broad, doesn't really give you a chance to focus his response. But if they say, you brought drugs and alcohol into the prison, he knows where to focus his efforts and what specifically he's going to talk about. How is he supposed to respond to that when he says, I don't know when or who or what? Yes, you say drugs and narcotics, and I was engaged in some rivalry over a two-year period of time, albeit at the prison. I don't know where to start in responding to that other than to say, no, I didn't do it. But again, Your Honor, the point of the response is not necessarily to combat the actual truth of the underlying allegations. Similarly, in the security clearance context, if the employee comes forward in Cheney and says, well, I didn't do any of those things, it's not going to affect the actual suspension of the security clearance because that's a determination being made not even by the agency, usually by another office. So it's really just to the extent that he can come forward and in some way combat the agency's conclusion that indefinitely suspending him promotes the efficiency of the service. So he might say, again, drugs and alcohol, not really that serious or not really closely related to my job because I have no contact with inmates. Something that would go with the agency's charge, case of demonstrating that the indefinitely suspension promotes the efficiency of the service. But as Judge Prost pointed out, if the merits of the underlying investigation are really not an issue, then what's the whole point of the degree to which the notice provides someone with an opportunity to respond? It seems like somewhat of a hollow exercise. Your answer, Your Honor, and the answer to that question, I think, just lies in the Cheney and Austin decisions because they are, I think, very analogous. The employee is entitled to an opportunity to respond and some notice of what's going on, what's behind. And under circumstances where the response will essentially have no effect. Well, it's difficult to say in every case whether it could have any effect on the agency's conclusion that the indefinitely suspension in that case promotes the efficiency of the service. But it might not in every case. Assuming that the agency had a reasonable basis to go forward, and I think that's a fair assumption, then it almost seems like no matter what the employee says, is it going to have an effect? Well, it's without specific facts, it's hard to respond. I certainly wouldn't think that it would be the case that the employee could never say anything that would have some effect on the indefinite suspension. But the bottom line is that the agency Well, I thought you were telling me that it would have an effect. He could say the charges are bogus. Look, this isn't a real investigation. I'm not really the target. He could say that even if this is all true, it doesn't have any real connection to what I'm doing on my job. So he could make both kinds of assertions in arguments, could he not? Yes, and I said that it could have an effect. But then in the end, it would always come down to the totality of the circumstances that were before the agency at the time they made the decision. And whether those total circumstances, including the response made by the employee, still left the agency with sufficient basis to conclude that an indefinitely suspended employee promotes the efficiency of the service. Thank you, Ms. Turner. Thank you, Your Honor. First, you have a little over two minutes. Thank you. The opportunity to reply here would be particularly meaningless because the warning did not even know the specific nature of the violations. She wasn't the warden who even sent the matter up to begin with. She knew nothing more than what was in the OIG letter and indicated that. There were some questions about whether it was alcohol or tobacco or other things. There was no suggestion even of alcohol. She didn't know any of those things, didn't care to know those things. So there was no meaningful opportunity to reply. As far as a reasonable cause standard, I invite you to look at the SCAM legislative history on this. It says that the term suspension follows the definition of that term previously adopted by the Civil Service Commission in its policy issuances. The former FPM provided that except when an agency suspends an employee indefinitely pending disposition of a criminal action, the agency should not base an adverse action on a criminal indictment or a conviction. Instead, the agency should base the action on the proven acts of wrongdoing. Those were the citations made in the Anchovitz case by the Court of Claims. And that was what Congress understood was a prevailing standard. And that provision was independent of a short notice period in a separate provision in that same FPM. So that Congress recognized that there was a conflated type of standard, that in an indefinite suspension, as it existed at that time, that you can go only based upon reasonable cause from an indictment or a conviction. Otherwise, you were to go on proven acts of misconduct. Moreover, Peten, Cord, and Polko, for the very reasons that Martin was the first time at the MSPB, talked about a reasonable cause standard independent of the 30-day notice that could come from the general promote the efficiency of the service standard because they recognized the dangers and due process implications of subjecting an employee to an administrative hearing while the criminal action is pending. If I may just say, Congress understood in the security clearance context that you could suspend without pay and chose not to do that here under 7532. Thank you. Mr. Kirsch? Yes.